

**United States District Court**
**Western District of Oklahoma**

NOV 1 3 2017

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____ Rm _____,DEPUTY

| | |
|---|---|
| **DON BARTHELME**<br>**12104 CORN FLOWER PLACE**<br>**OKLAHOMA CITY, OK 73120**<br><br><br>**Plaintiff,**<br><br>vs.<br><br>**SETERUS, INC.,**<br>**FEDERAL NATIONAL MORTGAGE**<br>**ASSOCIATION, and**<br>**FANNIE MAE REMIC TRUST 2004-21.**<br><br><br>**Defendants** | **Case No. 17-962**<br><br>**AMENDED COMPLAINT FOR:**<br><br>**WRONGFUL FORECLOSURE**<br><br>**VIOLATIONS OF FDCPA**<br><br>**INTENTIONAL INFLICTION OF**<br>**EMOTIONAL DISTRESS**<br><br>**DECLARATORY JUDGMENT**<br><br>**TRIAL BY JURY DEMANDED**<br><br>HEARINGS IN CHAMBER |

COMES NOW, Don Barthelme, Plaintiff the undersigned acting *Pro se,* proceeding to make the above captioned Complaint, and hereby shows cause;

## JURISDICTIONAL STATEMENT

1.      This Court has subject matter jurisdiction over this action because it presents one or more federal questions, 28 U.S.C. § 1331.

2.      Jurisdiction of this Court also arises under 28 U.S.C. § 1332(a) as there is diversity of citizenship among the parties and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs.

3.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the subject matter of the claims asserted by the Plaintiff in the State of Oklahoma in this action because

PLAINTIFF'S AMENDED COMPLAINT

those claims are also related to the claims asserted by the Defendants that they form part of the same case or controversy, and because those claims arise out of the same transactions or occurrences as the action brought by the Plaintiff.

4. Jurisdiction of this Court also arises under 15 U.S.C. § 1692 for Defendant's violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA").

5. This Court has personal jurisdiction over the Defendants because the Defendants have transacted business in this District and the State of Oklahoma and because the Defendants have committed acts herein detailed in this District and the State of Oklahoma.

6. At all times relevant to this action, Plaintiff has owned the Property located at 12104 Corn Flower Place., Oklahoma City, OK 73120, also hereinafter referred to as the "Property".

## VENUE

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES
## PLAINTIFF

8. Don Barthelme, Plaintiff, hereinafter also referred to as "Barthelme" is a natural person that owns the real property in Oklahoma City, OR which is subject to the controversy. Plaintiff is a citizen of the State of Oklahoma. The Plaintiff has suffered damages due to the action(s) of the Defendant(s) which are detailed herein.

## THE DEFENDANTS

9. Defendant Seterus, Inc., Plaintiff is informed and believes, is a homeowner loan servicing company headquartered in Hartford, Connecticut. Seterus, Inc., is conducting business as a foreign corporation under the laws of the State of Oklahoma.

PLAINTIFF'S AMENDED COMPLAINT

10.    Defendant Federal National Mortgage Association ("Fannie Mae"), Plaintiff is informed and believes, Defendant Fannie Mae is acting in the capacity of a trustee in its relationship to Defendant Fannie Mae REMIC Trust 2004-21 and is headquartered in Washington, DC, with several regional offices nationwide.

12.    Defendant Fannie Mae REMIC Trust 2004-21, Plaintiff is informed and believes is created as a trust and is governed by a trust agreement, Fannie Mae as trustee.

13.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants were the agents, employees, representatives, servants and/or the joint-ventures of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment, representatives and/or joint venture.

## INTRODUCTION

14.    This is an action brought by Plaintiff for Wrongful Foreclosure, violations of 15 U.S.C. §1692 *et seq.,* the Fair Debt Collection Practices Act, Intentional Infliction of Emotional Distress, and Declaratory Judgment and for compensatory, punitive, special and general damages.

15.    Plaintiff, Don Barthelme, disputes the title and ownership of the real property in question, which is the subject of this action, in that the originating mortgage lender, and others alleged to claim ownership of Plaintiff's Promissory Note and Mortgage, have unlawfully sold, assigned and/or transferred his ownership and security interest in a Promissory Note and Mortgage related to Plaintiff's property, and thus, do not have lawful ownership or a security interest in Plaintiff's home which is further described in detail herein.

PLAINTIFF'S AMENDED COMPLAINT

16.    Plaintiff, disputes the marketability, presence of cloud on title and alleged interest of the Defendants with regard to the real property in question, which is the subject of this action, in that the originating mortgage lender, and others alleged to claim ownership of Plaintiff's Promissory Note and/ or Mortgage, have unlawfully sold, assigned and/or transferred his ownership and security interest in a Promissory Note and Mortgage related to the Plaintiff's property, and thus, do not have lawful ownership or a security interest in Plaintiff's home which is further described in detail herein.

## BACKGROUND

17.    On or about February 11, 2004, Plaintiff entered into a consumer credit transaction with SunTrust Mortgage Inc, by obtaining a $110,500.00 mortgage loan secured by the property known as 12104 Corn Flower Place, Oklahoma City, Oklahoma 73120 (the "Property"). Plaintiff executed a Promissory Note ("Note") as part of the Loan transaction. This note was secured by a Mortgage, **EXHIBIT 1**, on the Property in favor of SunTrust Mortgage Inc., with the Mortgage Electronic Registration System ("MERS") as the "beneficiary" and nominee for the lender.

18.    On May 17, 2013, Defendant Fannie Mae filed a Petition for Foreclosure of Mortgage in the District Court in and for Oklahoma City, State of Oklahoma against Plaintiff. Service on Plaintiff was purportedly effectuated by publication and posting.  Plaintiff did not answer the Petition.

19.    On May 24, 2014, the trial court entered a default judgment against Plaintiff for the balance due on the Note and for foreclosure.

PLAINTIFF'S AMENDED COMPLAINT

20.    On June 17,2014 Plaintiff filed a Motion to Vacate the Judgment and a Motion to Answer.  Both Motions were denied.

21.    On January 13, 2016, the Court of Civil Appeals of the State of Oklahoma, Division II, ruling on the issue of whether the judgment sought to be vacated was void for lack of *in personam* jurisdiction due to the absence of due process, upheld the trial court's denial of Plaintiff's motions.

22.    On September 7, 2017 Plaintiff filed the Complaint in the instant action.  On September 27, 2017 Defendant SunTrust Mortgage, Inc.  filed a Motion to Dismiss Plaintiff's Complaint.  On September 29, 2017 Defendants Seterus, Inc., Fannie Mae REMIC Trust 2004-21 and Federal National Mortgage Association filed a Motion to Dismiss.

23.    Defendants and their agents collectively breached and violated Plaintiff's Mortgage by and through their participation in a wrongful foreclosure of Plaintiff's property, absent critical and viable proof any of the Defendants have standing, are lawful holders/owners of the Note and Mortgage, and have acquired and maintained lawful, as opposed to simple, possession.

24.    The Defendants illegal actions are including, but not limited to their actions in the various foreclosure actions against Plaintiff.

## FIRST CAUSE OF ACTION

## WRONGFUL FORECLOSURE

25.    In order to have standing to foreclose in Oklahoma, the party asserting the right to foreclose has to prove that he is the holder of the Note at the time the complaint was filed.

PLAINTIFF'S AMENDED COMPLAINT

26.    In the foreclosure action filed against Plaintiff, Defendant Fannie Mae alleged that it was the holder of the Note executed by Plaintiff.

27.    Defendant fraudulently made a misrepresentation of fact that it was the holder of the Note. Plaintiff's loan was identified in multiple classes of the Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2004-21 (hereinafter "Fannie Mae REMIC Trust 2004-21"). The loan is being serviced by Seterus.

28,    Fannie Mae is not the real party in interest. Fannie Mae as Trustee for of the Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2004-21, if anyone, is the real party in interest.

29.    Fannie Mae has been explicit about its role with respect to REMIC Trusts. In the Fannie Mae Amended and Restated 2007 Single-Family Master Trust Agreement for Guaranteed Mortgage Pass-Through Certificates evidencing undivided beneficial interests in Pools of Residential Mortgage Loans dated January 1, 2009, Fannie Mae stated:

> By delivering at least one Certificate of a Trust in the manner described in Section 3.1, the Issuer [i.e. **Fannie Mae**] **unconditionally, absolutely and irrevocably sets aside, transfers, assigns, sets over and otherwise conveys to the Trustee [i.e., Fannie Mae], on behalf of related Holders, all of the Issuer's [Fannie Mae] right, title and interest in and to the Mortgage Loans in the related Pool, together with any Pool Proceeds.**

> Concurrently with the Issuer's [Fannie Mae] setting aside, transferring, assigning, setting over and otherwise conveying Mortgage Loans to the Trustee for a Trust: (a) **the Trustee [Fannie Mae]… acknowledges that it holds all of the related Trust Fund in trust for the exclusive benefit of the related Holders [of certificates issued by the Trust]**

30.    Further in a document entitled Basics of Fannie Mae Single-Family MBS February 6, 2012, Fannie Mae stated:

> Basics of MBS Market & Pool

PLAINTIFF'S AMENDED COMPLAINT

In general, mortgage-backed securities are commonly called "MBS" or "Pools" but they can also be called "mortgage pass-through certificates." An investor in a mortgage-backed security -- the certificateholder -- owns an undivided interest in a pool of mortgages that serves as the underlying asset for the security. Interest payments and principal repayments from the individual mortgage loans are grouped and paid out to investors. The mortgages that back a Fannie Mae MBS are held in a trust on behalf of Fannie Mae MBS investors and are not Fannie Mae assets. As a Fannie Mae MBS investor, the certificateholder receives a pro rata share of the scheduled principal and interest from mortgagors on the loans backing the security. Interest is paid at a specific interest rate. The certificateholder also receives any unscheduled payments of principal.

31.    Therefore, Fannie Mae, by its own admission is not the holder of the Note at issue here.

32.    However, as explained in the transaction history specific to the Subject Property found in the Chain of Title Analysis and Mortgage Fraud Investigation, prepared by: Mortgage Compliance Investigations LLC.  **EXHIBIT 2,** the FNMA REMIC 2004-21 Trust also does not have standing to bring a foreclosure action against Plaintiff. *See* excerpts below:

## MORTGAGE FRAUD INVESTIGATION

1.    On June 19, 2017 I researched Don Barthelme whose property address is 12104 Corn Flower Place, Oklahoma City, OK 73120. Don Barthelme had allegedly signed a Note in favor of Suntrust Mortgage, Inc. on February 11, 2004. This loan was identified in multiple classes of the Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2004-21 (hereinafter "FNMA REMIC 2004-21") Trust. The loan is being serviced by Seterus.

5.    The beneficial interest (ownership) of the Barthelme Mortgage has been recorded in the Official Records of Oklahoma Registrar of Deeds Office as being in the name of Suntrust Mortgage, Inc., the Original Lender of the loan dated February 11, 2004. However, it is clear that Suntrust Mortgage, Inc. sold all ownership interest in the Barthelme Intangible Obligation to Fannie Mae shortly after the February 11, 2004 signing. Interest in the Barthelme Intangible Obligation is held in multiple classes of the FNMA REMIC 2004-21 Trust, and the payments.

58.    There is a document purporting to be an "Corporate Assignment of Mortgage", dated March 3, 2013 and filed in the Official Records of the Oklahoma Registrar of Deeds Office on April 16, 2013 as ins# 20130416010515960, signed by Raechel Dixon as Vice President and notarized March 7, 2013 by Chiquita L. Cross, Virginia Notary Commission #7250169,

7

PLAINTIFF'S AMENDED COMPLAINT

where Suntrust Mortgage, Inc., grants, assigns, and transfers to Federal National Mortgage Association all beneficial interest under a Mortgage dated February 11, 2004 and filed in the Official Records of the Oklahoma Registrar of Deeds Office on February 19, 2004 as ins# 2004026185.

62.     The Assignee, Federal National Mortgage Association, is not made the sole party of interest in the Barthelme Mortgage on the face of this document purporting to be an "Corporate Assignment of Mortgage" dated March 3, 2013. Additionally, there are other issues that render this document invalid as an Corporate Assignment of Mortgage…

63.     Suntrust Mortgage, Inc., was paid a value by Federal National Mortgage Association for the beneficial interest in the Barthelme Mortgage. This Corporate Assignment of Mortgage should have taken place prior to the closing date of the FNMA 2004-21 Trust which was March 30, 2004. This Assignment of Mortgage has been filed 9 years after the closing date of the FNMA 2004-21 Trust.

64.     The Original Lender, Suntrust Mortgage, Inc., gave up all rights to the Barthelme Intangible Obligation to Fannie Mae shortly after the February 11, 2004 signing. Once Suntrust Mortgage, Inc. had given up the rights to the Barthelme Intangible Obligation, the rights to the Barthelme Intangible Obligation were stripped away from the rights to the Barthelme Note and the rights to the Barthelme Mortgage. Suntrust Mortgage, Inc. could transfer beneficial rights to the Barthelme Note or Mortgage; however, that beneficial interest would not include rights to the Barthelme Intangible Obligation.

65.     The consequences of the rights to the Barthelme Intangible Obligation being stripped away from the beneficial interests of the Barthelme Note and Mortgage are that the Note is without an Intangible Obligation to evidence and the Barthelme Mortgage is without an Intangible Obligation to enforce conditions against.

66.     In view of the foregoing, the Document purporting to be an "Corporate Assignment of Mortgage", recorded in the Official Records of the Oklahoma Registrar of Deeds Office on April 16, 2013, can have no validity as it is unlawful attempt to reestablish legal title rights of the Barthelme Note and Barthelme Mortgage from an entity who has no authority to another entity who can have no authority.

## No One Can Claim the Right to Enforce the Barthelme Note

67.     The Barthelme Note has been signed by the Original Lender, Suntrust Mortgage, Inc., signed by Rose Burton as N/A. The instructions preceding the signature state "Pay to the Order of _____ without Recourse", where Suntrust Mortgage, Inc. has elected to transfer the Barthelme Note **by possession**

8

PLAINTIFF'S AMENDED COMPLAINT

**alone** by virtue of an indorsement made pursuant to Okl.St.Ann. 12A § 3-205 (b). With the Barthelme Note indorsed in blank, only **contractual** rights of the Barthelme Note would have been transferred, WITHOUT acquiring rights of enforcement as defined in Okl.St.Ann. 12A § 3-203 (a), as there is a lack of Agency relationship between the Barthelme Note and the Barthelme Mortgage filed of record, since a party cannot establish an Agency relationship with an as-of-yet-unnamed payee.

> *Okl.St.Ann. 12A § 3-205. Special Indorsement; Blank Indorsement; Anomalous Indorsement*
> *(b) If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a "blank indorsement". When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.*

> *Okl.St.Ann. 12A § 3-203. Transfer of Instrument; Rights Acquired by Transfer*
> *(a) An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.*

68.    The Barthelme Mortgage filed of record is unperfected, as one can not perfect an instrument to an as-of-yet-unnamed payee. For the Barthelme Note to remain a perfected public County record, the secured Mortgage requires the identity of the subsequent payee(s) to be on the face of the Barthelme Note and the assignment of the Mortgage rights needs to be properly and timely filed of record in the Official Records of the Oklahoma Registrar of Deeds Office.

69.    Suntrust Mortgage, Inc., along with signing away all rights to the Barthelme Note, wrote instructions that made its intention of negotiation of the Barthelme Note clear. The clear intention was that Suntrust Mortgage, Inc.'s negotiation of the Barthelme Note will only be complete when the payee is named. The Barthelme Note with an as-of-yet-unnamed payee is not and can not be treated as a "bearer" instrument as no person will acquire any right to the Barthelme Note until a payee is named. The Barthelme Note with an as-of-yet-unnamed payee is an incomplete instrument pursuant to Okl.St.Ann. 12A § 3-115.

*Okl.St.Ann. 12A § 3-115*
*(a) "Incomplete instrument" means a signed writing, whether or not issued by the signer, the contents of which show at the time of signing that it is incomplete but that the signer intended it to be completed by the addition of words or numbers.*

> *Okl.St.Ann. 12A § 3-110. Identification of Person to Whom Instrument is Payable.*
> *(a) The person to whom an instrument is initially payable is determined by the intent of the person, whether or not authorized, signing as, or in the*

9

PLAINTIFF'S AMENDED COMPLAINT

*name or behalf of, the issuer of the instrument. The instrument is payable to the person intended by the signer even if that person is identified in the instrument by a name or other identification that is not that of the intended person....*

70.    Under Okl.St.Ann. 12A § 3-203. (a) a transfer of the Barthelme Note through which rights can be acquired by a transferee is defined as a delivery from one person to another person.

*Okl.St.Ann. 12A § 3-203. Transfer of Instrument; Rights Acquired by Transfer (a) An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.*

71.    In agreement with Okl.St.Ann. 12A § 3-203(c), even Mortgage Electronic Registration Systems, Inc. (MERS) admits that ***"The debt can only be transferred by properly endorsing the promissory note to the transferee."*** Source: MERS Procedures Manual, Release 19.0, dated June 14, 2010, Page 63, *Transfer of Beneficial Rights to Member Investors, Overview.*

*Okl.St.Ann. 12A § 3-203. Transfer of Instrument; Rights Acquired by Transfer*
*(c) Unless otherwise agreed, if an instrument is transferred for value and the transferee does not become a holder because of lack of indorsement by the transferor, the transferee has a specifically enforceable right to the unqualified indorsement of the transferor, but negotiation of the instrument does not occur until the indorsement is made.*

72.    When Suntrust Mortgage, Inc. signed away all rights to the Barthelme Note to an as-of-yet-unnamed payee, Suntrust Mortgage, Inc. did not deliver the Barthelme Note to another person as required of a transfer through which rights can be acquired.

73.    Beside the fact that all rights were released upon signature, or that the signing away of all rights did not accomplish a negotiation of the Barthelme Note, Suntrust Mortgage, Inc. no longer has the entire rights to the Barthelme Note. Suntrust Mortgage, Inc. must have an entire interest in the Barthelme Note for a negotiation to occur. The intangible interest in the Barthelme Note has been transferred to multiple classes of the FNMA REMIC 2004-21 Trust. Suntrust Mortgage, Inc. can no longer claim the entire rights to the Barthelme Note. Suntrust Mortgage, Inc. can not accomplish a negotiation of the Barthelme Note.

74.    Under Okl.St.Ann. 12A § 7-501 Suntrust Mortgage, Inc. is now the only party that can accomplish a negotiation of the Barthelme Note. Under Okl.St.Ann. 12A § 3-203 (d), a negotiation of the Barthelme Note can not occur until Suntrust Mortgage, Inc. regains an entire interest in the Barthelme Note. Suntrust

10
PLAINTIFF'S AMENDED COMPLAINT

Mortgage, Inc. can not accomplish a negotiation of the Barthelme Note because Suntrust Mortgage, Inc. can no longer claim the entire rights to the Barthelme Note. A negotiation of the Barthelme Note can not occur until Suntrust Mortgage, Inc. regains the entire rights to the Barthelme Note.

> *Okl.St.Ann. 12A § 7-501. Form of Negotiation and Requirements of Due Negotiation*
> *(a) The following rules apply to a negotiable tangible document of title:*
> *(1) If the document's original terms run to the order of a named person,* ***the document is negotiated by the named person's endorsement and delivery****...* (emphasis added)

> *Okl.St.Ann. 12A § 3-203. Transfer of Instrument; Rights Acquired by Transfer*
> *(d) If a transferor purports to transfer less than the entire instrument, negotiation of the instrument does not occur. The transferee obtains no rights under this article and has only the rights of a partial assignee.*

75.    Suntrust Mortgage, Inc. transferred the rights to the Barthelme Intangible Obligation to Fannie Mae and released the rights to the Barthelme Note without naming a transferee. The rights to the Barthelme Intangible Obligation were transferred to multiple classes of the FNMA REMIC 2004-21 Trust so the Barthelme Note will travel on without the rights to the Barthelme Intangible Obligation. Whoever becomes the transferee of the Barthelme Note, through being named payee, will not acquire the right to enforce the Barthelme Note.

## The Terms of the Barthelme Mortgage have been Violated and the Barthelme Mortgage is Unenforceable

76.    Suntrust Mortgage, Inc. has released all rights to the Barthelme Note to an as-of-yet-unnamed payee. The Barthelme Mortgage as a contract can only enforce its contractual terms against the obligation evidenced by the Barthelme Note.

77. The Barthelme Mortgage is governed by Oklahoma Law. Oklahoma Law and Federal Law recognize and require proper recordation of assignment to transfer ownership of the Barthelme Mortgage.
From the Barthelme Mortgage:

> *16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract.*

PLAINTIFF'S AMENDED COMPLAINT

## Interest in the Barthelme Intangible Obligation Can Not be Rejoined to Interest in the Barthelme Note or the Barthelme Mortgage

78.     Multiple classes of the FNMA REMIC 2004-21 Trust have rights to the Barthelme Intangible Obligation. Multiple classes of the FNMA REMIC 2004-21 Trust were not each and all named as payee on the Barthelme Note and do not now have rights to the Barthelme Note. For multiple classes of the FNMA REMIC 2004-21 Trust to gain rights to the Barthelme Note, multiple classes of the FNMA REMIC 2004-21 Trust would each and all have to be named payee.

79.     There is no possible way for the Barthelme Note to be transferred to each and all multiple class of the FNMA REMIC 2004-21 Trust for the partial rights to the Barthelme Intangible Obligation that each owns. Interest in the Barthelme Intangible Obligation and rights to the Barthelme Note will remain separate.

80.     Because the rights to the Barthelme Mortgage were separated from the rights to the Barthelme Intangible Obligation, and will remain separate, the Barthelme Mortgage is left with no way to enforce its conditions over the obligation which should be evidenced by the Barthelme Note, making the Barthelme Mortgage an unenforceable contract.

## With Interest in the Barthelme Intangible Obligation Stripped Away and No Way to Enforce the Conditions Under the Barthelme Mortgage, the Barthelme Mortgage Contract is a Nullity

81.     The Interest in the Barthelme Intangible Obligation was separated from the rights to the Barthelme Note and the rights to the Barthelme Mortgage, leaving the Barthelme Note no Intangible Obligation to evidence and the Barthelme Mortgage no Intangible Obligation to enforce conditions over.

82.     Suntrust Mortgage, Inc. retained no beneficial interest in the Barthelme Intangible Obligation after selling the Barthelme Intangible Obligation to Fannie Mae shortly after the February 11, 2004 signing. No acceptable assignments of the Barthelme Mortgage to each and all multiple class of the FNMA REMIC 2004-21 Trust have been recorded into the Official Records of the Oklahoma Registrar of Deeds Office. There is no evidence of negotiations of the Barthelme Note to each and all multiple class of the FNMA REMIC 2004-21 Trust. With no properly-recorded owner of the Barthelme Mortgage, there is no one to enforce the conditions over the Barthelme Intangible Obligation which is no longer evidenced by the Barthelme Note. The Barthelme Intangible Obligation is no longer secured by the Barthelme Property.

PLAINTIFF'S AMENDED COMPLAINT

83.    Having no specific properly-secured owner of the limited beneficial interest of the Barthelme Note, there is no way to enforce the stripped-away Barthelme Intangible Obligation through the Barthelme Note.

*See* **EXHIBIT 2** at paragraphs 1, 5, 58, 62-83.

33.    *See also* AFFIDAVIT OF JOSEPH R. ESQUIVEL JR., EXHIBIT 3. The statements in his Affidavit are affirmed by Mr. Esquivel under penalty of perjury under laws of the State of Texas to be true and correct to the best of his knowledge and belief, on personal knowledge and being competent to make the statements.   Mr. Esquivel is an expert witness regarding the matters at hand and has testified as such in many venues including numerous State Court proceedings as well as U.S. District Court proceedings. *See* excerpts below:

11.    My research through professional services and the viewing of actual business records and Corporate/Trust Documents, determined that an interest in the Don Barthelme Mortgage Loan Instrument was sold sometime shortly after February 11, 2004 to multiple classes of the Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2004-21.

12. I have looked at a purported to be true and correct copy of a Tangible Promissory Note of Don Barthelme, dated February 11, 2004, regarding a loan for $110,500.00. The Original Lender of the February 11, 2004 Barthelme loan is Suntrust Mortgage, Inc. (See Exhibit "A" attached within).

a.   This copy of the Don Barthelme Note show has an incomplete stamping on the Note itself from Suntrust Mortgage, Inc., signed by Rose Burton as N/A, made payable to an as of Yet Unnamed Payee.

13. Federal National Mortgage Association is not named to the Don Barthelme Note.

14. The multiple classes of the Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2004-21 are not named on the Don Barthelme Note.

15. The Don Barthelme Note states, "In return for a loan that I have received, I promise to pay ..." This verbiage refers to a "loan" that occurred in the past. Between the Note and the Mortgage, neither state or even indicate *who* gave a "loan," *when* the "loan" happened, *how* much was given for the "loan," *how* did

13

PLAINTIFF'S AMENDED COMPLAINT

the "loan" take place, and *what* was "loaned" – "credit" or "money," and if credit, *where* did the "credit" come from, and whether the "credit was backed by "money." Without this information in the Note and Mortgage, there is no proof in the Don Barthelme Note and Mortgage that shows "consideration" was given to Don Barthelme for a "loan." The Don Barthelme Note and the Mortgage do not say that Suntrust Mortgage, Inc., gave Don Barthelme a "loan" or any consideration of any kind.

16. Per the language in the Note, the Note and the "loan" are two different matters. Neither provides *proof/evidence* as to *who* gave the alleged "loan," *when* the alleged "loan" happened, *how* much was given for the alleged "loan," *how* did the alleged "loan" take place, and *what* was "loaned" – "credit" or "money," and if it was credit, *where* did the "credit" come from, and whether the "credit was backed by "money." The Note and the Mortgage do not say that Suntrust Mortgage, Inc., gave Don Barthelme a "loan" or any consideration of any kind.

17. Without the *factually unsupported* clause in the Note, "*In return for a loan I have received …*", there is *nothing* in the Note or the Mortgage that states that any kind of "loan," as defined by State Law or Black's Law Dictionary, or any other consideration was given to Don Barthelme.

18.   The Don Barthelme Note is not evidence of a "loan" given by Suntrust Mortgage, Inc., to Don Barthelme.

19. I have looked at a Mortgage of Don Barthelme, dated February 11, 2004 and filed in the Official Records of the Oklahoma Registrar of Deeds Office on February 19, 2004 as ins# 2004026185. (See Exhibit "B" attached within).
  a. The multiple classes of the Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2004-21 are not named in any way to the Don Barthelme Mortgage.
  b. Seterus is not named or referenced in any way on the Don Barthelme Mortgage
  c. Federal National Mortgage Association is not or referenced in any way on the Don Barthelme Mortgage.

22. I have looked at the Oklahoma County Record relating to the Don Barthelme Mortgage dated February 11, 2004. The Oklahoma County Record shows an Corporate Assignment of Mortgage", dated March 3, 2013 and filed in the Official Records of the Oklahoma Registrar of Deeds Office on April 16, 2013 as ins# 20130416010515960, signed by Raechel Dixon as Vice President and notarized March 7, 2013 by Chiquita L. Cross, Virginia Notary Commission #7250169, where Suntrust Mortgage, Inc., grants, assigns, and transfers to Federal National Mortgage Association. (See Exhibit "E" attached within).

23. The Don Barthelme Assignment of Mortgage to Federal National Mortgage Association was recorded in April 16, 2013, which is nine (9) years *after* the

14

PLAINTIFF'S AMENDED COMPLAINT

Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2004-21 Trust closed on or about March 30, 2004, with, allegedly, Don Barthelme's Note and Mortgage already in the Trust.

24. There is no sale of the Don Barthelme Mortgage Loan caused through the Don Barthelme Corporate Assignment of Mortgage.

25. The transfer and sale of all Beneficial Interest of the Don Barthelme Mortgage to Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2004-21 should have been done on or before the Closing Date of the Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2004-21 which was March 30, 2004. The requirements for defining a REMIC from IRS can be found at 26 USCA §860 A thru G and by going to https://www.gpo.gov/fdsys/pkg/USCODE-2009-title26/html/USCODE-2009-title26-subtitleA-chap1-subchapM-partIV-sec860D.htm which mean that the Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2004-21 is unable to have any other assets put into the Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2004-21 after the Closing Date of March 30, 2004. The Assigning of a defective obligation to the REMIC also goes against what is required (Verbatim provided in pertinent part below)
USCA stands for United States Code Annotated.

Title 26 is the Internal Revenue Code

Subchapter M includes Regulated Investment Companies and Real Estate

Investment Trusts.

*26 U.S.C. 860D*

*United States Code, 2009 Edition*

*Title 26 - INTERNAL REVENUE CODE*

*Subtitle A - Income Taxes*

*PART IV - REAL ESTATE MORTGAGE INVESTMENT CONDUITS*

*Sec. 860D - REMIC defined*

*From the U.S. Government Printing Office, www.gpo.gov*

*§860D. REMIC defined*

*(a) General rule*

*For purposes of this title, the terms "real estate mortgage investment conduit"*

*and "REMIC" mean any entity—*

*(4) as of the close of the 3rd month beginning after the startup day and at all*

*times thereafter, substantially all of the assets of which consist of qualified*

*mortgages and permitted investments,*

15

PLAINTIFF'S AMENDED COMPLAINT

Exhibit 3 at paragraphs 11-23.

## SECOND CAUSE OF ACTION

### VIOLATIONS OF 15 U.S.C. §1692 *et seq.*, the Fair Debt Collection Practices Act

34.    On or about February 11, 2004, Plaintiff entered into a consumer credit transaction with SunTrust Mortgage Inc, by obtaining a $110,500.00 mortgage loan secured by the property known as 12104 Corn Flower Place, Oklahoma City, Oklahoma 73120 (the "Property").

35.    Defendants Seterus violated various provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA) as follows:

36.    Defendants Seterus is a debt collector as defined in 15 U.S.C. §1692a (6).

(6) The term "debt collector" means any person who...regularly collects or attempts to collect, directly or indirectly, debt owed or due or asserted to be owed or due another...

37.    Defendant Seterus sent various notice to Plaintiff, alleging that Fannie Mae was the holder of the Note. As discussed above, Defendant Fannie Mae was not the holder of the Note at the time the Complaint was filed.

38.    By these actions, Defendant Seterus violated 15 U.S.C. § 1692e (2)(A) by misstating the amount or legal status of any debt. By these actions Defendant Seterus also violated 15 U.S.C. § 1692e (10) by using deceptive means in an attempt to collect a debt which was not owed to Defendant Fannie Mae. Defendant Seterus knew, or should have known that Fannie Mae was not the holder of the Note entitled to enforce as defined by the Uniform Commercial Code ("UCC"), 13 Pa.C.S.§3301

39.    Plaintiff has been harmed by these actions in that the Complaint was accepted, a final Order granting the foreclosure was entered and the Property has been sold.

PLAINTIFF'S AMENDED COMPLAINT

40.     As a direct and proximate result of Defendant's violations, Plaintiff incurred and continues to incur damages in an amount not yet ascertained, including, without limitation, statutory damages.

## THIRD CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DSTRESS

41.     The actions of Defendant Fannie Mae, as set forth herein, have resulted in the Plaintiff's Property being sold. This outcome has been created without any right or privilege on the part of the Defendant Fannie Mae, and, as such, their actions constitute outrageous or reckless conduct on the part of Defendant Fannie Mae.

42.     Defendant Fannie Mae intentionally, knowingly and recklessly misrepresented to the Plaintiff it was entitled to foreclose on the Plaintiff.  In fact, Defendant Fannie Mae was not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

43.     Defendant Fannie Mae's conduct – fraudulently attempting to foreclose or claiming the right to foreclose on a property in which they have no right, title, or interest – is so outrageous and extreme that it exceeds all bounds which is usually tolerated in a civilized community

44.     At the time Defendant Fannie Mae began its fraudulent foreclosure proceedings, it was not acting in good faith while attempting to collect on the subject debt.  Defendant Fannie Mae committed the acts set forth above with complete, utter and reckless disregard of the probability of causing Plaintiff to suffer severe emotional distress.

45.     As an actual and proximate cause of Defendant Fannie Mae's fraudulent foreclosure on Plaintiff's home, Plaintiff has suffered many sleepless nights, severe depression, lack of appetite,

PLAINTIFF'S AMENDED COMPLAINT

and most everything related to physical, mental and emotional health, including damaged relationships with family and friends.

46.    The conduct of Defendant Fannie Mae, as herein described, was so vile, base, contemptible, miserable, wretched, and loathsome that it would be looked down upon and despised by ordinary people.  Plaintiff is therefore entitled to punitive damages in an amount appropriate to punish Defendant Fannie Mae and to deter others from engaging in similar conduct.

## FOURTH CAUSE OF ACTION

## DECLARATORY JUDGMENT

47.    Plaintiff has proved beyond any reasonable doubt the subject of Plaintiff's Complaint that Defendants have acted wrongfully prior and leading up to a proposed "sale" of Plaintiff's property, contrary to the conditions precedent of the terms of the subject Mortgage, the Oklahoma Code, the FDCPA, other Federal laws and the U.C.C.

48.    Defendants have exploited and abused their alleged authority to demand a sale of Plaintiff's property in fact and deed, using the so-called "sale" as a tool and instrument of fraud. Under these circumstances this Honorable Court should give no credence whatsoever to the alleged and illegal "sale" of Plaintiff's property, the result of a carefully designed fraud and conclusively powerless to stand the scrutiny to be effective at no time.

49.    Declaratory Relief is necessary and appropriate at this time because without judicial resolution all Parties herein will remain unclear and in dispute as to their respective rights, interests, and obligations.  Furthermore, whether the *"Mortgage"* factually or legally amounted to assign anything whatsoever, and further whether it exists as a "Cloud" on Plaintiff's Land Record/Real Property and hence should be removed.

18

PLAINTIFF'S AMENDED COMPLAINT

50.    Plaintiff will suffer irreparable harm in absence of the requested by not having had a marketable legal Title returnable to the *status quo* when it was let to Defendant. The original *status quo* was and is unique and valuable, the loss of which cannot be fully compensated by money damages.

51.    Plaintiff herein further alleges, that an actual controversy has arisen, and now exists and remains unresolved between Plaintiff and Defendants and any of their Agents as well as other individuals claiming, but factually and legally could not qualify, held to, or determined as "Bona Fide Purchasers", and other such claiming "BFPs", individuals and/or business entities concerning the legal effect and true nature of the *"Mortgage"* as being a "Cloud" on Plaintiff's Land Record/Real Estate Property, all of whom are relying on the validity and legality of subject *"Mortgage"*.

52.    As such legally and equitably the "Mortgage" referenced above should be Cancelled and Expunged from Plaintiff's Land Record/Real Property Title as it is not effective for foreclosure due to the sale of the Security Instruments to the FNMA REMIC 2004-21 Trust for which Defendant Fannie Mae is the Trustee.

53.     Defendants named herein and any of its Agents, as well as other Individuals or Entities all respectively dispute the contentions of the Plaintiff, hence the Plaintiff's suit for declaratory judgment.

**WHEREFORE,** for all the foregoing reasons, Plaintiff requests this Honorable Court to:

A) For Declaratory Relief by way of a Judicial Determination as follows:

That the *"Recordation of Mortgage" was "Voidable"* and therefore a "**Cloud**" on Plaintiff's Land Record/Real Property Title as it is not effective for foreclosure due to the sale of the

PLAINTIFF'S AMENDED COMPLAINT

Security Instruments to the Fannie Mae REMIC Trust 2004-21 for which Defendant Fannie Mae is the Trustee.;

B) For an Order, Decree and or Judgment thereby voiding and annulling the sale of Plaintiff's real property returning the Title to the Subject Property to Plaintiff the legal rightful owner, "Canceling" and "Expunging" the relative *"Recordation of Mortgage", illegally Filed & Recorded* from Plaintiff's Land Record/Real Property Title held, maintained and currently on record with the Oklahoma County Oklahoma Recorder's Office;

C) For an Order, Decree and or Judgment thereby granting Plaintiff actual, statutory and punitive damages due and requested in Counts 1 - 3.

Respectfully presented by Plaintiff the 11 day of November 2017.


DON BARTHELME
12104 CORN FLOWER PLACE
OKLAHOMA CITY, OK  73120
Phone: 405.748.6709
Email: bart83@gmail.com

PLAINTIFF'S AMENDED COMPLAINT

Either known to me or having proper identification, Affiant personally came before me

and having been duly sworn did state and affirm the above statements.

On this the 9th day of november, 2017.



NOTARY

State of Oklahoma
County of Oklahoma

23

## SERVICE LIST

Kelly M Parker
LAMUN MOCK CUNNYNGHAM & DAVIS PC
5613 N Classen Blvd
Oklahoma City, OK 73118-1295

Graham W. Gerhardt
BRADLEY ARANT BOULT CUMMINGS, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed, first class

mail, postage prepaid to the above listed persons on the service list, this $\underline{11}$ day of

November 2017.

Don Barthelme
Don Barthelme